1
2
3
4
5          **UNITED STATES DISTRICT COURT**

6          **SOUTHERN DISTRICT OF CALIFORNIA**

7

8    FEDERAL DEPOSIT INSURANCE                CASE NO. 10cv980-WQH-BGS
     CORPORATION, as Receiver for LA JOLLA
     BANK, FSB,                                ORDER
9
                                  Plaintiff,
10
           vs.
11   DANNY TARKANIAN, an individual; AMY
     M. TARKANIAN, an individual; JERRY
12   TARKANIAN, an individual; LOIS
     TARKANIAN, an individual; GEORGE
13   TARKANIAN, an individual; ZAFRIR
     DIAMONT, an individual; JOSEPHINE
14   DIAMONT, an individual; DOUGLAS R.
     JOHNSON, an individual; DEBRA
15   JOHNSON, an individual; and DOES 1
     through 100, inclusive,
16
                                 Defendants.
17   ───────────────────────────────────
18   DANNY TARKANIAN; AMY M.
     TARKANIAN; JERRY TARKANIAN; LOIS
19   TARKANIAN; GEORGE TARKANIAN;
     ZAFRIR DIAMONT; JOSEPHINE
20   DIAMONT; DOUGLAS R. JOHNSON;
     DEBRA JOHNSON,
21
                             Counterclaimants,
22
           vs.
23
     FEDERAL DEPOSIT INSURANCE
24   CORPORATION, Receiver for LA JOLLA
     BANK, FSB, a federally chartered savings
25   bank; DOES I-X, inclusive; and ROE
     CORPORATIONS I-X, inclusive,
26
                           Counterdefendants.
27

28

1  DANNY TARKANIAN; AMY M.
   TARKANIAN; JERRY TARKANIAN; LOIS
2  TARKANIAN; GEORGE TARKANIAN;
   ZAFRIR DIAMONT; JOSEPHINE
3  DIAMONT; DOUGLAS R. JOHNSON;
   DEBRA JOHNSON,
4
                           Third Party Plaintiffs,
5            vs.
6  BEN WIGGINS; DOES I-X, inclusive; and
   ROE CORPORATIONS I-X, inclusive,
7
                           Third Party Defendants.
8  HAYES, Judge:

9          The matter before the Court is the Motion to Dismiss Counterclaim under F.R.C.P.

10  12(b)(6) and Motion to Strike under F.R.C.P. 12(f) ("Motion to Dismiss"), filed by

11  Plaintiff/Counterdefendant Federal Deposit Insurance Corporation ("FDIC"), as Receiver for

12  La Jolla Bank, FSB ("La Jolla Bank").  (ECF No. 15).

13  **I.      Background**

14          On December 10, 2009, La Jolla Bank initiated this action by filing a Complaint against

15  Defendants in San Diego County Superior Court.  (ECF No. 1).

16          **A.      Allegations of the Complaint**

17          On July 12, 2007, Vegas Diamond LLC, through its manager Defendant Danny

18  Tarkanian, executed a Promissory Note ("Note #1") in the amount of $14,568,750 and a Deed

19  of Trust securing payment of Note #1 with 8.96 acres of vacant land currently owned by Vegas

20  Diamond LLC and located near Barbara Street and Las Vegas Boulevard in Las Vegas,

21  Nevada ("Vegas Diamond Property").  The maturity date for the Note was August 1, 2009.

22  The performances due under Note #1 and the Deed of Trust were guarantied and secured by

23  nine separate commercial guaranties signed by Defendants Danny Tarkanian, Amy M.

24  Tarkanian, Jerry Tarkanian, Lois Tarkanian, George Tarkanian, Zafrir Diamont, Josephine

25  Diamont, Douglas R. Johnson and Debra Johnson.  "Pursuant to the terms of the Guaranties,

26  Guarantors each absolutely and unconditionally guaranteed full and personal payment and

27  satisfaction of the indebtedness of the Borrower Vegas Diamond LLC to Lender Plaintiff."

28  *Id*. ¶ 26.

1    "The conditions of Note #1 have not been performed, in that Vegas Diamond LLC has

2    failed to make the monthly installments of interest required under Note #1." *Id*. ¶ 40.  Neither

3    Vegas Diamond LLC nor Defendants have paid the full amount of Note #1.  "Plaintiff has

4    complied with the terms and performed all obligations under Note #1." *Id*. ¶ 44.

5        On July 12, 2007, Johnson LLC, through its manager Defendant Douglas R. Johnson,

6    executed a Promissory Note ("Note #2") in the amount of $10,933,125 and a Deed of Trust

7    securing payment of Note #2 with two parcels of property owned by Johnson Investment LLC

8    in Las Vegas, Nevada: 4.19 acres of vacant land located near Barbara Street and Las Vegas

9    Boulevard, and 2.50 acres of vacant land located near Barbara Street and South Las Vegas

10   Boulevard ("Johnson Properties").  The maturity date for Note #2 was August 1, 2009.  The

11   performances due under Note #2 and the Deed of Trust were guarantied and secured by two

12   separate commercial guaranties signed by Defendants Douglas R. Johnson and Debra Johnson.

13   "Pursuant to the terms of the Guaranties, Guarantors each absolutely and unconditionally

14   guaranteed full and personal payment and satisfaction of the indebtedness of the Borrower

15   Johnson LLC to Lender Plaintiff." *Id*. ¶ 35.

16       "The conditions of Note #2 have not been performed, in that Johnson LLC has failed

17   to make the monthly installments of interest required under Note #2." *Id*. ¶ 55.  Neither

18   Johnson LLC nor Defendants have paid the full amount of Note #2.  "Plaintiff has complied

19   with the terms and performed all obligations under Note #2." *Id*. ¶ 59.

20       The Complaint contains two causes of action: (1) breach of Guaranty Note #1 against

21   all Defendants, and (2) breach of Guaranty Note #2 against Defendants Douglas R. Johnson

22   and Debra Johnson.  The Complaint requests damages, costs and attorney's fees.

23   **B.    Removal**

24       On February 19, 2010, La Jolla Bank was closed by the Office of Thrift Supervision and

25   the FDIC was appointed as Receiver.  (ECF No. 1, Ex. A).  Pursuant to 12 U.S.C. § 1821, the

26   FDIC has succeeded to all rights, titles, powers and privileges of La Jolla Bank, and the FDIC

27   is charged with preserving and conserving La Jolla Bank's assets.

28       On April 12, 2010, the San Diego Superior Court granted the FDIC's request to amend

the Complaint to change the name of the Plaintiff from "La Jolla Bank, FSB" to "Federal Deposit Insurance Corporation, as Receiver for La Jolla Bank, FSB." (ECF No. 1, Ex. B at 20).

On May 6, 2010, the FDIC removed the case to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1441. (ECF No. 1).

On May 11, 2010, Defendants filed an Answer, Counterclaim and Third Party Complaint. (ECF No. 6).

**C.     Allegations of the Counterclaim and Third Party Complaint**

In 2001 or 2002, Robert A. Dyson, Jr., an owner of various "real estate entities," began investing in a real estate development in Anza, California ("Anza Project"). *Id*. ¶ 19.

Defendant Douglas R. Johnson, who had previously been employed by Dyson, "agreed to help Mr. Dyson obtain funds for the Anza Project by encumbering the Johnson Property." *Id*. ¶ 47; *see also id*. ¶ 44. In 2005, "Mr. Dyson arranged for Mr. Johnson to take a loan from Community National Bank ... in the amount of approximately $7.5 million, secured by the Johnson Properties." *Id*. ¶ 48. "The loan from Community Bank was for two years, with interest only payments at 7% interest, with the full balance due at the end of the two year period." *Id*. ¶ 49. "From the Community Bank Loan, Mr. Johnson gave the proceeds to Mr. Dyson at 12% interest for the two year term, with interest only payments and the full balance due at the end. There was no security for the loan made by Mr. Johnson to Mr. Dyson." *Id*. ¶ 50.

"At and prior to the time Mr. Dyson took the loan from Mr. Johnson, Mr. Dyson was encountering severe resistance and trouble in proceeding with the Anza Project." *Id*. ¶ 55. "Because La Jolla Bank had ventured loans to Mr. Dyson on the Anza Project, and given Mr. Dyson's personal relationship with [Rick] Hall, [a principal of La Jolla Bank,] and [Dyson's] participation in weekly meetings at La Jolla Bank, La Jolla Bank was fully aware of the issues adverse to the Anza Project and the ultimate delays." *Id*. ¶ 56. "At one point, La Jolla Bank was going to co-locate one of its loan offices with one of Mr. Dyson's 'retail' real estate businesses in Las Vegas." *Id*. ¶ 31. "La Jolla Bank told [Dyson] that before they would

venture another loan on the Anza Project, [Dyson] needed to find an investor or equity partner to meet certain so-called 'equity requirements' established by La Jolla Bank." *Id*. ¶ 41.

"At the end of the two year loan period from Mr. Johnson, Mr. Dyson was unable to pay off the balance of the loan." *Id*. ¶ 58. "Mr. Dyson never informed Mr. Johnson of the problems with the Anza Project." *Id*. ¶ 61. "Instead of paying off Mr. Johnson, Mr. Dyson brought La Jolla Bank into the transaction. A new loan was structured for Mr. Johnson by Mr. Dyson, his accountant/bookkeeper, [Third Party Defendant] Ben Wiggins, and La Jolla Bank such that the loan from Community Bank would be paid off and additional funds provided to Mr. Dyson." *Id*. ¶¶ 62-63.

Dyson met with Defendants Douglas R. Johnson and Danny Tarkanian and "provided [Johnson and Tarkanian] documents and oral representations ... painting a very strong financial picture for the Anza Project and high likelihood of return on [their] investment." *Id*. ¶ 64; *see also id*. ¶ 66. "Mr. Dyson represented to Mr. Johnson and Mr. Tarkanian that proceeds from the loans would be used to obtain more property ... and by mapping the project," which would "increase the value of the Anza Project." *Id.* ¶ 73. "After several meetings with Mr. Dyson, Mr. Johnson and Mr. Tarkanian agreed to take loans from La Jolla Bank secured against the Johnson Properties and Vegas Diamond Property and in turn, to loan the proceeds to Mr. Dyson." *Id*. ¶ 68. "Without ever meeting, discussing or negotiating with anyone affiliated with La Jolla Bank, Johnson Investments received a $10,933,125 loan secured by the Johnson Propert[ies] and Vegas Diamond received a $14,568,750 loan secured by the Vegas Diamond Property from La Jolla Bank; these loans were arranged from La Jolla Bank by Mr. Dyson and Mr. Wiggins." *Id*. ¶ 69. "Mr. Johnson and his wife, Debra Johnson, were required to personally guarantee the Johnson Investment Loan and Mr. Tarkanian, his wife, and his extended family were required to personally guarantee the Vegas Diamond loan." *Id*. ¶ 70.

"Under the terms of the various loan documents, both Johnson Investments and Vegas Diamond were to pay approximately 5% on the loan to La Jolla Bank. The terms of the two loans were for two years with interest only payments, with the full balances due at the end of the two year term." *Id*. ¶ 74. "Under the deal with Mr. Dyson, Mr. Dyson became obligated

to Johnson Investments and Vegas Diamond for the full amount of the loans and in addition, [Dyson] agreed to pay approximately 11% interest." *Id*. ¶ 75. "As security for the loans made by Johnson Investments and Vegas Diamond to Mr. Dyson, Mr. Dyson gave Johnson Investments and Vegas Diamond a second mortgage on the Anza Project." *Id*. ¶ 83.

"Unbeknownst to Mr. Johnson and Mr. Tarkanian, in conjunction with the Vegas Diamond and Johnson Investments transactions with La Jolla Bank, Mr. Dyson was, himself, taking a $7.5 million loan from La Jolla Bank secured with a first deed of trust against the Anza Project. ... [N]either La Jolla Bank, Mr. Dyson nor Mr. Wiggins ever disclosed to the Counterclaimants the existence of this additional loan to Johnson Investments and Vegas Diamond." *Id*. ¶¶ 80-81. "Unbeknownst to Mr. Johnson and Mr. Tarkanian, money from the loans made by La Jolla Bank to Johnson Investments and Vegas Diamond was used to pay off other loans Mr. Dyson had with La Jolla Bank." *Id.* ¶ 84. "As it turns out, the Anza Project which was only worth around $15 million, was securing loans in the amount of $32.5 million–the loan from La Jolla Bank to Mr. Dyson secured by a first on the Anza Project and the loans made by ... La Jolla Bank to Johnson Investments and Vegas Diamond secured by a second on the Anza Project." *Id*. ¶ 87.

"There were many irregularities with the loans from La Jolla Bank to Johnson Investments and Vegas Diamond; all communications, document[] preparation, signatures and other activities were done exclusively with Mr. Dyson and his accountant and/or bookkeeper, Mr. Wiggins." *Id*. ¶ 95. "Neither Mr. Johnson nor Mr. Tarkanian were ever in any communication with or ever contacted by La Jolla Bank. Mr. Dyson and Mr. Wiggins did all of the work for La Jolla Bank–they negotiated the terms of the loan from La Jolla Bank to Johnson Investment and Vegas Diamond, provided and assisted in the preparation of the loan applications, arranged for the appraisal, and took each loan document to the home of the individual borrowers." *Id*. ¶ 96.

"Less than one month after the loans from La Jolla Bank to Johnson Investments and Vegas Diamond closed, Mr. Dyson defaulted on the first interest payment." *Id*. ¶ 92. "[S]ix months after the loan was funded, Mr. Dyson received water approval to map the Anza Project;

however, two weeks later, Mr. Dyson advised Johnson Investments and Vegas Diamond that he was not going to map the project because he had run out of money." *Id.* ¶ 94.

"As of September 9, 2009, La Jolla Bank was subject to an 'Order to Cease and Desist' issued by the Office of Thrift Supervision ('OTS'), United States of America. ... [T]he OTS found that La Jolla Bank has engaged in unsafe and unsound banking practices which have resulted in inadequate asset quality, earnings, liquidity planning, and capital levels at La Jolla Bank." *Id.* ¶¶ 97, 99.

Dyson "cannot be sued in this matter at this time because he filed for bankruptcy on ... October 31, 2009." *Id.* ¶ 22.

On January 8, 2010, Vegas Diamond Properties LLC and Johnson Investments LLC filed suit in Nevada state court. "As the Vegas Diamond Property and the Johnson Propert[ies] were subject to a Trustee's Sale, in conjunction with filing suit Vegas Diamond and Johnson [Investment] sought a Temporary Restraining Order." *Id.* ¶ 101. On January 11, 2010, the Nevada state court issued a Temporary Restraining Order which "enjoins La Jolla Bank from foreclosing upon and conducting a sale of the subject Properties." *Id.* ¶ 18. La Jolla Bank removed the action to the United States District Court, Southern District of Nevada. "By Stipulation and Order filed February 9, 2010, the Parties agreed that La Jolla Bank was further enjoined from conducting a Trustee's Sale pending further order of the Court." *Id.* ¶ 104.

The Counterclaim alleges five causes of action against La Jolla Bank: (1) fraudulent concealment; (2) negligence; (3) civil conspiracy; (4) breach of the covenant of good faith and fair dealing; and (5) aiding and abetting deceit. The Counterclaim requests damages, punitive damages, costs and attorney's fees. The Third Party Complaint alleges two causes of action against Wiggins: (1) civil conspiracy, and (2) aiding and abetting deceit.

### D.    Motion to Dismiss

On June 30, 2010, the FDIC filed the Motion to Dismiss. (ECF No. 15). The FDIC contends: "The Counterclaim should be dismissed in its entirety and with prejudice because [La Jolla Bank] did not have a duty to disclose or advise [Counterclaimants] of risks associated with investments for which the borrower requires funding. The borrower, not the bank, has

a responsibility for conducting due diligence on the investment." (ECF No. 15-1 at 5).  The FDIC contends that the claim for fraudulent concealment should be dismissed because Counterclaimants "have failed to allege the justifiable reliance element."  *Id*.  The FDIC contends that Counterclaimants "have also failed to allege any facts supporting causation or damages, and this is fatal to every cause of action."  *Id*. at 6.  The FDIC moves to strike the prayer for punitive damages because "punitive damages are unavailable against an agency of the United States."  *Id*.  The FDIC also moves to strike the request for attorney's fees because it "violates the American Rule."  *Id*.

On July 26, 2010, Counterclaimants filed an opposition to the Motion to Dismiss. (ECF No. 18).  Counterclaimants contend:

> There are special circumstances extant that trigger La Jolla Bank's duty to disclose, including a fiduciary duty and exclusive knowledge of facts unavailable to the Counterclaimants.  As a result of the special relationship between the parties, La Jolla Bank had an absolute duty to disclose where it had access to information unavailable to the Counterclaimants and where La Jolla Bank stood to benefit and improve its own shaky financial posture through the loans.  Towards that end, Dyson and Wiggins, ostensible agents for La Jolla Bank, negotiated with the Counterclaimants and oversaw the execution of the loan documents.  Accordingly, La Jolla Bank is liable for the actions of its agents.

*Id*. at 28-29.  Counterclaimants do not oppose the motion to strike the prayer for punitive damages, but contend that the request for attorney's fees is proper pursuant to California Civil Code § 1717.

On July 30, 2010, the FDIC filed a reply in support of the Motion to Dismiss. (ECF No. 19).  The FDIC withdrew the motion to strike the attorney fee request in the Counterclaim.

## II.     Discussion

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937,

1950 (2009).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

### B.  Duty to Disclose

The FDIC contends that each of the causes of action in the Counterclaim must be dismissed because, under California law, "lenders do not have a duty of disclosure towards borrowers."  (ECF No. 15-1 at 17).

Each of the Counterclaim's five causes of action allege that La Jolla Bank is liable for "fail[ing] to disclose certain material facts which would have effected the Counterclaimants' business decision regarding the loans."  (ECF No. 6 ¶ 122).  The Counterclaim alleges that La Jolla Bank had a duty to disclose because of "special circumstances":

> Under these special circumstances, La Jolla Bank was imparted with a duty to disclose various material facts including, but not limited to, that it had a long-term, ongoing relationship with Mr. Dyson; monies from the loan transactions with the Counterclaimants were being applied to repay other loans La Jolla Bank had made to Mr. Dyson; that the pay-off of Mr. Dyson's loans would profit La Jolla Bank; that there were problems with the Anza Project affecting its viability and financial stability; and/or that the entire transaction was dependent on Mr. Dyson's ability to repay the loans given the shaky financial condition Mr. Dyson created with La Jolla Bank - all facts unknown and undisclosed to the Counterclaimants and available from no other source.

*Id.* ¶ 114.

Under California law,[1] "absent special circumstances ... a loan transaction is an arms-length and there is no fiduciary relationship between the borrower and lender."  *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (Cal. App. 2006) (citations omitted).  "As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citations omitted).  "[F]or example, a lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an

---

[1]  The parties do not dispute that California law applies.

unsafe investment." *Id.* at 1096 (citing *Wagner v. Benson*, 101 Cal. App. 3d 27, 33-35 (1980)). "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner*, 101 Cal. App. 3d at 35 (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)).

In *Connor*, the California Supreme Court held that a lender owed a duty of care to its borrowers because the lender "had the right to exercise extensive control of [a home construction] enterprise" and received "not only interest on its construction loans," but also additional fees and "protection from loss of profits." *Connor*, 69 Cal. 2d at 864; *see also Watkinson v. MortgageIT, Inc.*, No. 10cv327, 2010 WL 2196083, at *9 (S.D. Cal., June 1, 2010) (holding that the complaint alleged sufficient facts to show lender owed borrower a duty of care when borrower allegedly "misstated the value of the Property in order to induce him into acquiring the more riskier loan") (citation omitted). In arriving at its holding that a duty existed, the California Supreme Court balanced the following factors:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Connor*, 69 Cal. 2d at 865 (quotation omitted).

The Counterclaim alleges the following: the loans from La Jolla Bank to Johnson Investments and Vegas Diamond contained "many irregularities" (ECF No. 6 ¶ 95); La Jolla Bank knew of Dyson's problems with the Anza Project and of the "perilous web created by Mr. Dyson," *id.* ¶¶ 56, 91; La Jolla Bank established "equity requirements" for Dyson, *id.* ¶ 41; "[t]o meet La Jolla Bank's equity requirements," Dyson arranged for the Johnson Investments and Vegas Diamond loans, with the result that "La Jolla Bank ... profit[ed] from having Mr. Dyson's [existing] loans paid-off by use of the Counterclaimants' loan proceeds," *id.* ¶¶ 42, 110; La Jolla Bank "encumber the Counterclaimants' real properties and to ameliorate La Jolla Bank's shaky financial position," *id.* ¶ 126; "La Jolla Bank knew that the Anza Project was worth only around $15 million, yet it was securing loans in the amount of

"$32.5 million," *id*. ¶ 112; Counterclaimants were not informed that the proceeds of their loans were used to pay La Jolla Bank and La Jolla Bank had secured a first deed of trust on the Anza Project which resulted in Counterclaimants' mortgage on the Anza Project to be of lesser value, *id*. ¶¶ 110, 112; the above "facts [were] unknown and undisclosed to the Counterclaimants and available from no other source," *id*. ¶ 114. Based upon the alleged knowledge and participation of La Jolla Bank in the Anza Project, the Court finds that the majority of the factors discussed in *Connor* weigh in favor of the existence of a duty on the part of La Jolla Bank. The Counterclaim alleges facts that La Jolla Bank had a voice in Dyson's activities and stood to benefit from the Johnson Investments and Vegas Diamond loans by more than just the interest charged. *See Connor*, 69 Cal. 2d at 864; *cf. First Interstate Bank of Cal. v. Winncrest Homes, Inc.*, 2003 WL 21734032, at *31 (Cal. Ct. App., July 25, 2003) (holding that "no special duty arose" when a lender "had no voice in [the property developer]'s activities and stood to benefit from the loan only by virtue of the interest charged"). The Counterclaim alleges that the Counterclaimants' loans from La Jolla Bank were designed to substantially improve La Jolla Bank's financial position at the expense of Counterclaimants' financial position. The facts alleged support the conclusion that La Jolla Bank's "involvement in the loan transaction ... exceed[ed] the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal. App. 3d at 1096. The Counterclaim adequately alleges that this information was unknown and unavailable to Counterclaimants from any source other than La Jolla Bank and Dyson.[2]

The Court concludes that the Counterclaim adequately alleges facts which could give rise to a duty on the part of La Jolla Bank toward Counterclaimants pursuant to California law. Accordingly, the FDIC's Motion to Dismiss on the grounds that La Jolla Bank owed

---

[2] The FDIC submits documents indicating that Danny Tarkanian is an active member of the Nevada bar, and Douglas R. Johnson and Amy Tarkanian are both real estate agents registered in Nevada. The FDIC contends that the Counterclaim's allegation that Counterclaimants were "ignorant about loan priorities and disbursement of loan funds" is "inconsistent with what real estate salespersons and a lawyer should know, especially given that HUD-1 estimated closing statements are issued before closing which detail the loan disbursements." (ECF No. 15-1 at 11). The record does not contain a loan closing statement, and the Court declines to take judicial notice of the contents of a document which has not been submitted to the Court.

1  Counterclaimants no duty is denied.

2  **C.    Justifiable Reliance**

3      The FDIC contends that the fraudulent concealment cause of action should be dismissed

4  because "the Fraudulent Concealment claim does not and cannot allege justifiable reliance."

5  (ECF No. 19 at 8).   The FDIC contends that "[t]his defect cannot be cured by amendment

6  because judicially noticeable facts and allegations in the Complaint/Counterclaim are

7  inconsistent with justifiable reliance." *Id*.   The FDIC requests that the Court take judicial

8  notice of the fact that Danny Tarkanian is an attorney, and Douglas R. Johnson and Amy

9  Tarkanian are real estate agents.   The FDIC points to the allegations that Counterclaimants'

10 companies own valuable real estate in Las Vegas, and Douglas R. Johnson "had already

11 invested in the Anza Project for two years before [La Jolla Bank] became involved." (ECF No.

12 15-1 at 14).   The FDIC contends: "These are not indicia of people who are vulnerable or

13 unsophisticated.   These facts reveal that Defendants knew exactly what they were doing and

14 the risks involved." *Id*. (emphasis omitted).

15     "The elements of fraud ... are (a) misrepresentation (false representation, concealment,

16 or nondisclosure); (b) knowledge of falsity ...; (c) intent to defraud ...; (d) justifiable reliance;

17 and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003) (quotation

18 omitted).   Allegations of fraud must meet the heightened pleading standards of Federal Rule

19 of Civil Procedure 9(b), which requires "specificity including an account of the time, place,

20 and specific content of the false representations as well as the identities of the parties to the

21 misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).   "[I]t is clear

22 that a plaintiff in a fraudulent concealment suit will not be able to specify the time, place, and

23 specific content of an omission as precisely as would a plaintiff in a false representation

24 claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)

25 (quotation omitted).   "Because such a plaintiff is alleging a failure to act instead of an

26 affirmative act, the plaintiff cannot point out the specific moment when the defendant failed

27 to act.  So, a ... fraud by concealment claim can succeed without the same level of specificity

28 required by a normal fraud claim." *Id*. (quotation omitted).

1    Under California law, "[r]eliance exists when the misrepresentation or nondisclosure
2    was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and
3    when without such misrepresentation or nondisclosure he or she would not, in all reasonable
4    probability, have entered into the contract or other transaction." *Alliance Mortgage Co. v.*
5    *Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (citation omitted). "Except in the rare case where the
6    undisputed facts leave no room for a reasonable difference of opinion, the question of whether
7    a plaintiff's reliance is reasonable is a question of fact. However, whether a party's reliance
8    was justified may be decided as a matter of law if reasonable minds can come to only one
9    conclusion based on the facts." *Id.* (quotations omitted).

10   The Counterclaim alleges that La Jolla Bank and Dyson had "exclusive knowledge of
11   ... material facts" and these facts were "absolutely unavailable to the Counterclaimants from
12   any other source." (ECF No. 6 ¶¶ 107, 115). The Counterclaim alleges that "La Jolla Bank
13   and Mr. Dyson actively concealed these material facts from the Counterclaimants at the time
14   they were contemplating the business decision as to whether to go forward with the loans."
15   *Id.* ¶ 116. The Counterclaim alleges that these "material facts would have effected the
16   Counterclaimants' business decision regarding the loans." *Id.* ¶ 122. Viewing these
17   allegations in the light most favorable to Counterclaimants, the Court concludes that the
18   allegations of the Counterclaim are sufficient to allege the element of justifiable reliance.

19   The Motion to Dismiss the fraudulent concealment cause of action is denied.

20   **D.    Causation and Damages**

21   The FDIC contends that Counterclaimants "have ... failed to allege any facts supporting
22   causation or damages, and this is fatal to every cause of action." (ECF No. 15-1 at 6).

23   The Counterclaim alleges that the undisclosed and undiscoverable "material facts would
24   have effected the Counterclaimants' business decision regarding the loans." (ECF No. 6 ¶
25   122). The Counterclaim alleges generally that "[a]s a direct and proximate result of La Jolla
26   Bank's and Mr. Dyson's active and fraudulent concealment of these material facts from the
27   Counterclaimants, Counterclaimants have been damaged in an amount in excess of $10,000.00,
28   in an amount to be proven at the time of trial of this matter." *Id.* ¶ 117; *see also id.* ¶¶ 123,

129, 136, 141.  The Counterclaim alleges that Dyson defaulted on the first interest payment to Counterclaimants' companies.  *See id.* ¶ 92.  The Counterclaim alleges that the Vegas Diamond Property and Johnson Properties are "subject to a Trustee's Sale."  *Id.* ¶ 101.

The Court concludes that these allegations are sufficient to allege causation and damages.  The Motion to Dismiss the Counterclaim on the grounds of failure to allege causation and damages is denied.

**E.     Motion to Strike**

In its reply brief, the FDIC conceded that "the attorney fee request in the Counterclaim is proper and the motion to strike [the attorney fee request] can be withdrawn."  (ECF No. 19 at 10).  In the opposition brief, Counterclaimants conceded that the request for punitive damages should be stricken because punitive damages are not available against the FDIC.  (ECF No. 18 at 32).  Accordingly, the request for punitive damages is stricken.

**III.    Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss Counterclaim under F.R.C.P. 12(b)(6) and Motion to Strike under F.R.C.P. 12(f) is granted in part and denied in part.  (ECF No. 15).  The motion to strike the request for punitive damages is granted.  In all other respects, the motion is denied.

DATED:  October 5, 2010

**WILLIAM Q. HAYES**
United States District Judge